**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHEN DISTRICT OF OHIO**
**WESTERN DIVISION**

Holly C. James,                                           Case No. 5:10-CV-02448

     Plaintiff,                                    :

v.                                                        :

Commissioner of Social Security,              :        **MEMORANDUM OPINION AND**
                                                          **ORDER**

     Defendant.                                    :

The parties to this action have consented to have the undersigned Magistrate enter judgment in this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3)  of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 et seq.  Pending are the parties' briefs on the merits (Docket Nos. 18 & 19).  For the reasons that follow, the Commissioner's decision is affirmed.


**I.  PROCEDURAL BACKGROUND**

Plaintiff protectively filed applications for DIB and SSI  benefits on March 30, 2004.  ( Tr.55, 1147-50, 1151-53),  alleging disability beginning February 25, 2004, due to  impairments including depression, tachycardia, breast cancer, and degenerative arthritis.  ( Tr. 55, 780, 1147–53)   After her applications were denied  initially and upon reconsideration, Plaintiff requested and was granted an

Administrative Hearing   (Tr. 1154, 1155-58, 1159, 1160-62).  Plaintiff testified with counsel at a

Hearing held on March 14, 2007 before  ALJ Paul R. Armstrong.  (Tr. 1180-1211).  On April 24, 2007,

ALJ Armstrong issued a decision finding that Plaintiff was not disabled.   (Tr.52-63).

   Plaintiff's request for review by the Appeals Council was successful.  In its January 4, 2008,

Remand Order the Appeals Council directed the ALJ to identify, among other factors,  how the mental

limitations assessed by the State Agency affected Plaintiff's application.  (Tr.47-8).  The Appeals

Council Order also directed the ALJ to obtain a copy of the ALJ decision of February 24, 2004 (issued

pursuant to Plaintiff's DIB and SSI applications of January and February, 2001.[1] ) and, under

Acquiescence Rulings 96-3(6) and 98-4(6), and discuss the findings of fact contained in that decision

and the weight given in the current decision pursuant  to those rulings.  (Tr. 47)


   A Remand Hearing was held on June 18, 2008, (Tr. 45-9, 1212-36).   On August 19, 2008, ALJ

Armstrong issued a Notice of Decision - Unfavorable finding no disability.   (Tr.708-20).

   The Appeals Counsel again granted Plaintiff's request for review in June, 2009 and remanded

---

   [1]  Plaintiff filed an application for DIB on March 5, 2001 with a protective filing date of
February 28, 2001.  (Tr. 81, 100-102).  Plaintiff also filed an application for SSI on January 24,
2001.  (Tr. 81).  A Social Security Notice denying Plaintiff's DIB application was issued on July
20, 2001.  (Tr. 90-93).  Plaintiff filed a Request for Reconsideration on September 17, 2001.  (Tr.
94).  A Social Security Notice finding the denial of .Plaintiff's DIB claim proper was issued on
December 3, 2001.  (Tr. 95-98).  Plaintiff filed a Request for Hearing by Administrative Law
Judge on January 14, 2002.  (Tr. 99).  A Notice of Hearing was filed on August 4, 2003.  (Tr.
638).  Plaintiff appeared and testified at a hearing held on September 22, 2003.  (Tr. 81).  On
February 24, 2004, ALJ Cynthia Bretthauer issued an unfavorable decision to this application.
(Tr. 78-87). On August 27, 2004, the Appeals Counsel denied Plaintiff's request for review.  (Tr.
73-75)

the case..  (Tr. 723-27).   The final Hearing in this matter took place on December 29, 2009.  (Tr. 1164-79).   On March 5, 2010 then presiding ALJ Michael P. Breton issued a Notice of Decision - Unfavorable.  (Tr. 21-32).  On May 3, 2010 Plaintiff filed a Request for Review of Hearing Decision.  (Tr. 20).  On September 10, 2010 the Appeals Council denied Plaintiff's Request for Review.  Consequentially the ALJ decision of March 5, 2010 became the final decision of the Commissioner of Social Security.  (Tr. 16-18).

On October 27, 2010, Plaintiff filed a Complaint with this Court seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  McClanahan v. Commissioner of Social Security, 474 F.3d 830, 832 -33 (6th Cir. 2006).

### III. FACTUAL BACKGROUND AND MEDICAL CONDITION

#### PLAINTIFF'S HISTORY

Plaintiff was 40 years old as of February 25, 2004, her alleged disability onset date.  (Tr. 1147)   Her formal education includes completing eighth grade in1979, and a nurse assistant program in 1981.  ((Tr.786).  She is five feet three inches tall and weighs 240 pounds.  (Tr.1169).   Her vocational experience includes working such jobs as restaurant and grocery cashier, gas station manager, grocery deli worker and lead associate at a grocery.  (Tr. 781, 1168).

#### PLAINTIFF'S MEDICAL HISTORY

3       From 1996 through February 25, 2004, Plaintiff received sporadic treatment for various issues

3

including depression, shoulder and back pain, chest pain, and shortness of breath (Tr. 162–423, 435–61, 471–594, 605–11, 613–21, 667–93, 860–65, 904–30, 998–1009, 1097–98).   Plaintiff underwent a mastectomy in August 2000 for breast cancer (Tr. 194).  Follow-up examinations revealed no evidence of recurrent related disease (Tr. 474, 482, 488, 514). She was evaluated in January 2001 for complaints of heart palpitations and was diagnosed with tachycardia (Tr. 275–76). Plaintiff's treating cardiologist and her occupational therapist both opined in October 2001 that Plaintiff had few, if any, limitations caused by physical impairments (Tr. 597–604, 622–28).

Plaintiff underwent several psychological evaluations in 2001 (Tr. 424–29, 430–34). Three different doctors agreed that Plaintiff had no or only mild  limitations in her mental functional capacities.  (Tr. 427, 432–33, 629).  Later that year, two state agency reviewing doctors concluded that Plaintiff was capable of performing mental work functions with few limitations.  (Tr. 469, 470).  In 2003, Frederick Leidal, Psy.D., examined Plaintiff and opined that she had no more than moderate impairments in her mental ability to perform work-related functions (Tr. 706).

Plaintiff continued intermittent treatment for heart problems, back pain, and other miscellaneous issues after February 25, 2004.  (Tr. 866–73, 899–903, 938–97, 1010–97, 1099–1145).  In July 2004, a psychologist, Dr. Curt Ickes, Ph.D., performed a consultative examination.  (Tr. 875–78).  Dr. Ickes opined that Plaintiff would be mildly-to-moderately impaired in her ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks, and withstand the stress and pressures associated with day-to-day work activities.  (Tr. 878).  He further concluded that Plaintiff had only mild limitations in her ability to relate with others and understand, remember and follow instructions.  (Tr. 878.).

4

Later in 2004, two state agency reviewing doctors agreed that Plaintiff had only moderate limitations dealing with normal work stress and completing a normal work week and was able to maintain employment in a low stress work environment.  (Tr. 895).  Two other state agency reviewing physicians rendered opinions agreeing that Plaintiff was capable of lifting or carrying up to 20 pounds occasionally and 10 pounds frequently; standing, walking, or sitting for about six hours in an eight-hour workday and had some postural limitations.  (Tr. 932–34). One of Plaintiff's treating physicians indicated in October 2004 that Plaintiff's physical limitations, if any, were "unknown."  (Tr. 957).

#### DECEMBER 29, 2009 HEARING TESTIMONY

The Court limits its recitation of hearing testimony in this case to the matters addressed in the December 29, 2009 second remand hearing.[2]

Plaintiff's Hearing Testimony

At the hearing Plaintiff stated she suffers from supra ventricular tachycardia, heart myopathy, fibromyalgia, lymphedema of the right arm, right foot pain, degenerative arthritis of the lower back, hips and neck, depression and anxiety.  (Tr. 1169).  Her cardiac condition is relatively stable.  (Tr. 1169).

She lives by herself, cooks for herself sometimes, and does her own laundry, although sometimes her son-in-law will carry her laundry for her.  (Tr. 1170).  She doesn't do much of her

---

[2]  In reaching the decisions set forth in  the instant Opinion and Order this Court considered the whole of the record, including testimony from the March 14, 2007 hearing and the June 18, 2008 first remand hearing.  The Court would have also reviewed the September 22, 2003 hearing testimony.  No transcript of that hearing was included in the record provided to the Court.  Because Plaintiff's sole claim of error in this matter arises essentially out of the December 29, 2009 second remand hearing, this Court finds it necessary to refer directly to only the testimony in that hearing.

own food shopping, stating that she can't handle all the people.  (Tr 1171).  She gets anxiety panic

attacks.  (Tr. 1171).  She takes Paxil (paroxetine) to treat this condition.  (Tr 1171).  She has

fibromyalgia, which causes fatigue, and she takes Flexeril (cyclobenzaprine)  for the fibromyalgia,

which also causes fatigue, and the fatigue causes nausea.  (Tr 1172).

She is unable to do any of her past jobs.  (Tr. 1172).  She cannot slice meat as a deli worker

because the weight of a cooked ham is 25 pounds, which she states she cannot lift.  (Tr 1172-73).

All of her past jobs have required her to stand all day and that she cannot stand all day.  (Tr 1173).

During a normal day she would typically take a 20 minute to an hour rest or nap in the

morning and the afternoon.  (Tr. 1173-74).  Her lower back pain, on a scale of one to ten, is six to

six and a half.  (Tr. 1174).  In the course of an eight hour day she would not be able to work eight

hours because she gets tired, nauseated and can't handle the people.  (Tr. 1174).   She would not be

able to work five days a week because her left leg gets numb due to neuropathy and because the

medication she takes for her neuropathy, Neurontn (gabapentin), makes her spacey and makes it

difficult to concentrate.  (Tr. 1174-75).  She has sleep apnea, and she sees a physician for that

condition.  (Tr. 1175).

Medical Expert Hearing Testimony

There was no ME witness at the December 29, 2000 hearing.

Vocational Expert Hearing Testimony

At the December 29, 2009 hearing before ALJ Breton, VE Michael Dorval, a vocational

consultant, described Plaintiff's work history over the previous fifteen years, stating that Plaintiff

had been a manager of a retail store, which was identified as a light exertion, skilled job and a deli clerk, which was identified as a light exertion, unskilled job.  (Tr. 1176).

ALJ Breton asked the VE to consider whether a hypothetical individual - the same age, educational background and past work experience as Plaintiff, who also retained the residual functional capacity for work,  who would also be limited to light work, with no more than occasional climbing, stooping, bending, twisting, kneeling or crawling, where there would be no heights or ladders, no hazards or dangerous machinery; limited to simple, unskilled tasks which require limited concentration - could perform Plaintiff's past, relevant work.  (Tr. 1177). The VE responded no. (Tr. 1177).

Posing a first hypothetical question, ALJ Breton asked, whether given the above referenced limitations, there would be other jobs.  (Tr. 1177).  The VE responded that there would be other jobs such a person could do, giving the examples of cafeteria attendant, of which there are 2400 such jobs in Ohio and 73,000 nationally; office cleaner / house keeper, of which there are 11,000 such jobs in Ohio and 376,000 jobs nationally and cashier, of which there are 42,000 such jobs in Ohio and 1 million  nationally.  (Tr. 1177).  The VE also stated that these jobs are performed as described in the DOT and that they are light, unskilled positions.  (Tr. 1177).

Posing a second hypothetical, ALJ Breton asked  the VE to assume that  the same individual was limited to sedentary work, but that the other limitations remain the same and asked whether the individual could still perform the above referenced jobs.  (Tr. 1177).  The VE responded affirmatively and offered the examples of hand packager of small items such as toys, games or jewelry, of which there are 1100 such jobs in Ohio and 22,000 nationally; information clerk, of

which there are 2800 such jobs in Ohio and 110,000 nationally and parking attendant, of which there are 1800 jobs in Ohio and 122,000 nationally, and that all these jobs are performed as described in the DOT.  (Tr. 1178).

Posing a third hypothetical, ALJ Brenton asked that the VE assume the individual also required frequent and unscheduled rest breaks throughout the course of the work day and whether, given such additional limitations, there would be any jobs.  (Tr. 1178).  In response, the VE stated that there would be no jobs that such a person would be able to perform on a sustained, regular and full time basis.  (Tr. 1178).

### IV.  ANALYTICAL OVERVIEW: DETERMINING DISABILITY

District Court review of Commissioner of Social Security disability determinations is, essentially, appellate in nature, and is limited to evaluating whether the decision made by the Commissioner is supported by "substantial evidence" and consistent with applicable, legal standards. Colvin v. Barnhart , supra, 475 F.3d 727, 729 (6th Cir. 2007.

The "substantial evidence" component of judicial review requires that the Court determine that the Commissioner's decision is based on "more than a scintilla of evidence but less than a preponderance; [and that] it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Cutlip v. Sec'y of Health & Human Servs, 25 F.3d 284, 286 (6th Cir. 1994).

Moreover, because district court  review of the Commissioner's decision is, essentially, appellate in character, the court is not to undertake de novo review, and is restrained from attempting to resolve evidentiary conflicts as well as from  making credibility determinations.  Id.  Rather, the reviewing court is bound to affirm the Commissioner's decision, provided that decision is supported

8

by substantial evidence, even if the court were inclined to have decided the case differently.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).  Where supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring plaintiff's side.  Listenbee v. Sec'y of Health & Human Servs., 846 F.2d 345, 349 (6th Cir. 1988).  Furthermore, the decision by the administrative law judge is not subject to reversal even where substantial evidence could have supported an opposite conclusion.  Smith v. Chater, 99 F.3d 780, 781-82 (6th Cir. 1996).

DIB and SSI are properly awarded only to applicants who are determined to suffer from a "disability."  Colvin, supra, 475 F.3d 727, 730 (6th Cir. 2007), (citing, 42 U.S.C. § 423(a), (d)).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Colvin, supra,  (475 F.3d at 729), citing, 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); See also 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

In determining disability under 42 C.F.R..§§ 404.1520 and 416.920, the ALJ must undertake a five step sequential analysis:

Step 1: Determine whether applicant is  engaged in "substantial gainful activity" at the time benefits are being sought.  If yes,  the applicant is not disabled. If no, then move to step 2.[3]

---

[3]  Substantial gainful activity is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R § 404.1572(a) and 20 C.F.R § 416.972(b). "Gainful work activity" is work that is usually done for pay or profit, whether or not profit is realized.  20 C.F.R § 404.1572(b) and 20 C.F.R § 416.972(b).  If an individual engages in substantial gainful activity that person is determined not to be disabled, regardless of the severity of any otherwise identified impairments, mental or physical.

9

Step 2: Determine whether the applicant suffers from any impairment which, either by itself or in combination with one or several other impairment, is "severe."  If there is no finding of a "severe" impairment, then there is no disability.  If there is a determination that the applicant suffers a "severe" impairment, move to step 3.[4]

Step 3: Determine whether any previously identified severe impairment meets or equals a listing in the Listing of Impairments.  If yes, then the applicant is disabled.  If no, proceed to step 4.[5]

Step 4: Determine if the applicant retains sufficient "residual functional capacity"[6] to allow for the performance of his past, relevant work .  If  the applicant possesses sufficient residual functional capacity to perform his past relevant work, then there is no disability.   If not, move to

---

[4]Under the regulations, an impairment or combination of impairments is "severe"if it significantly limits the individual's ability to perform basic work activities. Impairments are "not severe" where medical and other evidence establish only slight abnormalities, individually or in combination, that have no more than a minimal, adverse effect on the individual's ability to work. .  20 C.F.R § 404.1521 and 20 C.F.R § 416.921.

[5]  The previously identified severe impairment or combination of impairments must meet or medically equal an impairment listed in 20 C.F.R Part 404, Subpart P, Appendix 1.   20 C.F.R §§  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and  416.926..

[6]  A determination of the applicant's residual functional capacity must be done before the determination of whether applicant can perform past relevant work. .  20 C.F.R § 404.1520(e) and 20 C.F.R § 416.920(e).  An applicant's residual functional capacity is the ability to perform physical or mental work activities on a sustained basis even though the applicant may suffer limitations from his impairments. In making a residual functional capacity determination all the appllciant's impairments, including those impairments that are not severe, must be considered. 20 C.F.R § 404.1520(e), 20 C.F.R §§ 416.920(e) and 416.945.

step 5.[7]

Step 5: Determine if there are jobs in the current economy that applicant could perform, given the limits of her residual functional capacity and consistent with the applicant's other relevant characteristics.  If there are such jobs, then the applicant is not disabled.  If there are no such jobs, then the applicant is disabled.[8]  See Heckler v. Campbell, 461 U.S. 458, 460, 76 L. Ed. 2d 66, 103 S. Ct. 1952 (1983), see also Combs v. Comm'r of Soc. Sec., 400 F.3d 353 (6th Cir. 2005),  Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003);  Preslar v. Sec'y of Health & Human Servs., 14 F.3d 1107, 1110 (6th Cir. 1994).  20 C.F.R. § 404.1520 (1982););  Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028-29 (6th Cir. 1990),. Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

### V. ALJ FINDINGS OF FACT AND CONCLUSIONS OF LAW

After consideration of the entire record, and in accordance with the five step sequential analysis, the ALJ made the following findings of fact and conclusions of law after the final hearing held on December 29, 2009:

---

[7]  Past relevant work means work performed either as the applicant actually performed it or as it is generally performed in the national economy either within the past 15 years or 15 years prior to the date the disability must be established. Additionally the work must have lasted long enough for the applicant to have learned the job and for it to have become substantial gainful activity for him.  20 C.F.R §§ 404.1560(b) 404.1565 and 20 C.F.R §§ 416.960(b) and 945.965.

[8]  The determination of whether the applicant can do any work at all must take into consideration the applicants residual functional capacity along with the applicant's age, education and work experience.  At this stage the burden is upon the Commissioner to show that work exists in significant numbers within the economy that the applicant can do, given the applicant's limiting characteristics.   20 C.F.R §§ 404.1512(g) 404.1560(c) and 20 C.F.R §§ 416.912(g) and 945.960(c)
.

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2004.

2.    The claimant has not engaged in substantial gainful activity since February 25, 2004, the alleged onset date.  (20 C.F.R §§ 404.1571, et seq. and 416.971 et seq.).

3.    The claimant has the following severe impairments: affective disorder, borderline intellectual functioning, fibromyalgia, idiopathic cardiomyopathy, chronic back pain and obesity.   (20 C.F.R §§ 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.)

5.    The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she can only occasionally climb, stoop, bend, twist, kneel and crawl; she cannot work around heights or hazards; she cannot climb ladders, ropes and scaffolding; and she is limited to simple, unskilled work.

6.    The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7.    The claimant was born on December 18, 1963 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  The claimant subsequently changed age category to a younger individual age 45-49 (20 C.F.R. §§ 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English.  (20 C.F.R. §§ 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See S.S.R. 82-41 and 20 C.F.R.Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a))

11.    The claimant has not been under a disability, as defined in the Social Security Act, from February 25 2004 through the date of this decision.  (20 C.F.R. §§ 404.1520(g) and

12

416.920(g)).

(Tr. 26-32)

## VI. STANDARD OF REVIEW

The district court shall affirm  the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence.  McClanahan v. Comm'r of Soc.  474 F.3d 830 at 833 (citing Branham v. Gardner, 383 F.2d 614, 626-627 (6th Cir. 1967)).  The Commissioner's findings as to any fact shall be conclusive if supported by substantial evidence.  Id. (citing 42 U.S.C. § 405(g )).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (citing Besaw v. Secretary of Health and Human Services, 966 F.2d 1028, 1030 (6th Cir. 1992)).

"The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  Id. (citing Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)).  Therefore, the reviewing court may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.  Cutlip, supra 25 F.3d 284, 286 (citing Brainard v. Secretary of Health and Human Services, 889 F. 2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F. 2d 383, 387 (6th Cir. 1984)).

### VII. PLAINTIFF'S STATEMENTS OF ERROR ARGUMENT S AND POSITIONS

Plaintiff contends that the ALJ's decision that Plaintiff possesses vocational qualifications and residual functional capacity sufficient to enable her to perform specific jobs pursuant to 20 C.F,R

13

§404.1520(f) is not supported by substantial evidence and is, therefore, in error.  (Plaintiff's Statement

of Specific Errors,  1).  In support, Plaintiff states, avers and argues:

1.   ALJ Breton erred in deciding that Plaintiff has the vocational qualifications to perform specific
     jobs pursuant to 20 C.F.R § 404.1520(f), by failing to evaluate properly the Vocational Expert's
     answer - that there were "no jobs such individual would be able to  perform on a sustained,
     regular and full time basis" - to the ALJ's third hypothetical.  (Plaintiff's Statement of Specific
     Errors. 2, 5)

2.   ALJ Brenton erred either in basing his decision on speculative and improperly elicited testimony
     from the Vocational Expert or by contradicting uncontroverted evidence presented by the
     Vocational Expert.  (Plaintiff's Statement of Specific Errors, 6)

3.   When the sequential disability analysis proceeds to the fifth step, the burden is on the
     Commissioner to establish that there are sufficient jobs in the economy that a claimant with
     specified  history, characteristics and residual functional capacity can perform, and the
     Commissioner failed to meet this burden.  Plaintiff's Statement of Specific Errors, 6-7)

### VIII. Defendant's argument s and positions

     Defendant disputes the arguments set forth in Plaintiff's Statement of Specific Errors and asserts

that substantial evidence supports the ALJ's finding of residual functional capacity, credibility of

witnesses, including Plaintiff and the weight attributed to the medical source opinions.

     In support Defendant states, avers and argues:

1.   The ALJ found the following constituted substantive evidence supporting his decision that
     Plaintiff was not disabled:

          (a) Plaintiff was capable of performing a limited range of sedentary work  (Defendant's
          Brief, 6.)  (Tr. 28); (b) Plaintiff's claim of disabling pain was not entirely credible.
          (Defendant's Brief, 6)  (Tr. 29-30); (c) Plaintiff's claim of disability related to or arising
          out of breast cancer was unsupported by the record   (Defendant's Brief 6) (Tr. 29-30);
          (d) Plaintiff's heart condition, back and spine impairments, and fibromyalgia were
          mostly mild, adequately treated and the objective record of these ailments did not
          indicate incapacity.  (Defendant's Brief 6-7)  (Tr. 29-30); (e) Plaintiff's mental status
          was mostly normal, she engaged in a range of daily activities, her primary impairments
          were not related to her mental condition, she sought treatment for situational depression
          only intermittently, and her low intellectual functioning would not preclude simple work.

14

(Defendant's Brief, 7)  (Tr. 29-30); and (f) No treating or examining physician has indicated that Plaintiff has physical or mental impairments which would prevent her from working, and Plaintiff's only significant limitation was that she should avoid heavy lifting due to a back injury in 2009.   (Defendant's Brief, 7) (Tr. 30).

2.   Plaintiff did not offer specific allegations of error as to the ALJ's residual functional capacity finding and, because Plaintiff did not raise such a specific argument,  this Court should deem such arguments waived, citing, McPherson v. Kelsey, 125 F.3d 989 (6th Cir. 1997). (Defendant's Brief, 7-8).

3.   The ALJ's residual functional capacity finding, limiting Plaintiff to a restricted range of sedentary work, was supported by substantial evidence, including treatment notes that revealed mild test results, successful treatment, medical opinions of mild limitations and evidence that Plaintiff retained the ability to perform a variety of activities.  (Defendant's Brief, 8, 9).

4.   The ALJ's second hypothetical question described a hypothetical individual with limitations virtually identical to the limitations ascribed to the Plaintiff in the ALJ's residual functional capacity finding, and, in response to said question, the Vocational Expert opined that such a person could perform various jobs in the economy and offered three examples of such jobs. (Defendant's Brief,  8) (Tr. 31-32, 1177-1178)

5.   The ALJ properly relied on this testimony of the VE to support his finding that Plaintiff was capable of performing significant number of jobs in the national economy.  (Defendant's Brief, 8) ( Tr. 31-32)

6.   Plaintiff does not contest the VE's answer to the ALJ's second hypothetical question. (Defendant's Brief, 8)

7.   Plaintiff's primary argument - challenging the ALJ's assessment of the VE's answer to the third hypothetical question - represents a confusion of issues.  (Defendant's Brief, 8).

8.   Plaintiff fails to establish where and how the record supports attributing to Plaintiff the additional limitation (i.e., the limitation of requiring frequent and unscheduled rest breaks during the work day) described in the ALJ's third hypothetical.  Plaintiff also fails to establish that any physician offered the opinion that Plaintiff required frequent and unscheduled rest breaks during the work day.  Plaintiff's failure in this regard requires that any argument based on same be waived, citing, Mcpherson, supra, 125 F.3d 989.  (Defendant's Brief, 8, 9).

9.   A Vocational Expert's testimony is not evidence that is used to determine an applicant's residual functional capacity and, accordingly, the purpose and function of the VE is not to  determine the nature of an applicant's restrictions.  Rather, it is the function of the ALJ first to determine the nature of an applicant's restrictions and how such restrictions affect and limit an applicant's

15

residual functional capacity, and only then does a VE opine on whether there are jobs for such an individual, <u>citing</u>, <u>Maziarz v. Sec'y of Health & Human Servs.</u>, 837 F.2d 240 (6th Cir. 1987). (Defendant's Brief, 8-9).

10.    An ALJ is permitted to pose a hypothetical to a VE on the basis of the ALJ;'s own assessment and the ALJ is required to incorporate in his findings only such limitations as are deemed to be credible, <u>citing</u>, <u>Jones v. Comm'r of Soc. Sec.</u>, 336 F.3d 469 (6th Cir. 2003) and <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230 (6h Cir. 1993).  (Defendant's Brief, 9)

11.    Finally, Defendant's second hypothetical question most accurately embodies the ALJ's residual functional capacity determination of the Plaintiff and, thus, constitutes a valid basis, supported by substantial evidence, for the finding of no disability.

### IX.  ANALYSIS

Upon review of the briefs of parties and the record in this case, this Court finds that there are two issues to be considered:

### Issue No. 1

Did Plaintiff fail to make a specific argument regarding the ALJ's residual functional capacity finding and, if so, does such failure constitute an appropriate basis for this Court to deem Plaintiff's argument and claim of error waived?   (Defendant's Brief,  7-8, 9)

### Discussion of Question No. 1.

Issue No. 1 is a preliminary, procedural matter.  Defendant asserts that Plaintiff's arguments should be deemed waived, stating that Plaintiff failed to make any specific argument regarding the ALJ's residual functional capacity finding and failed to show, with required specificity, how the record supports Plaintiff's position concerning the status of the additional limitations posed in the ALJ's third hypothetical question.  (Defendant's Brief,. 7-8, 9)

Defendant relies upon <u>McPherson v. Kelsey</u>, 125 F.3d 989, <u>supra</u>, for the following proposition: "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

16

argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the

most skeletal way, leaving the court to . . . put flesh on its bones."  McPherson, 125 F.3d at 995-96,

quoting, Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n, 59 F.3d 284,

293-94 (1st Cir. 1995).

      Neither McPherson, supra, nor Citizens Awareness Network, Inc., supra, are Social Security

cases and, while they articulate a useful and desirable principle applicable to brief and motion practice,

they are not necessarily determinative of minimum briefing requirements of the present case.

      More apposite Gregory v. Astrue, 2011 U.S. Dist. LEXIS 127732 (E.D. Ky. S.D., November 3,

2011), a Social Security case decided by the Eastern District of Kentucky, Southern Division earlier this

year.  The Court addressed an issue similar to the issue raised by Defendant in the instant matter, i.e.,

the minimum briefing standards required of claimants in setting forth their arguments or assignments

of error.

      The Court noted:

> "[P]laintiff has failed to comply with General Order 09-13 issued by the Chief Judge of
> the Eastern District of Kentucky, which requires plaintiffs to "include a statement of the legal
> arguments presented at the beginning of the motion . . . in a numbered list." While the Court may
> deny Plaintiff's motion based on this failure alone, the Court has attempted to discern Plaintiff's
> arguments from the entirety of his memorandum. This has been a difficult task because
> Plaintiff's memorandum is disorganized and fails to clearly articulate any individualized
> arguments."

Gregory, supra, 2011 U.S. Dist. LEXIS 127732, at *6-*7.

      Neither the General Orders nor the Local Civil Rules of the United States District Court for the

Northern District of Ohio Local impose specific requirements for presenting arguments in briefs and

motions, in general, or in Social Security cases, in particular, similar to those set forth in General Order

09-13 of the Eastern District of Kentucky.

While the Court acknowledges the concerns raised by Defendant regarding the manner of presentation of Plaintiff's arguments and notes that Plaintiff might have been more artful in this regard, this Court finds that, despite a lack of detail and specificity, Plaintiff's brief did set forth an articulable claim of error, and, therefore, there is no appropriate basis to deem Plaintiff's arguments or statements of error waived.

Accordingly Defendant's motion to have Plaintiff's arguments deemed waived is denied.

### Issue No. 2

Did the Vocational Expert's response, that there were no jobs, to the ALJ's third hypothetical question compel a finding that Plaintiff was disabled? (Plaintiff's Statement of Specific Errors, 1-2, 5-6).

### Discussion of Issue No. 2

Plaintiff disputes the ALJ's finding that Plaintiff is not disabled. Plaintiff argues that the ALJ finding - that there are jobs in the economy that Plaintiff can perform and, thus, no disability - is in error[9]. Plaintiff asserts that, based upon the VE's answer to the ALJ's third hypothetical question, Plaintiff is disabled.

The ALJ's Residual Functional Capacity Determination

Under the analytical scheme established by the regulations, residual functional capacity is meant to describe the claimant's physical and mental work abilities. The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the

---

[9] The ALJ's finding was based upon the ALJ's review of the whole of the record, including, specifically the VE's answer to the ALJ's second hypothetical questions

18

Administrative Law Judge when cases are decided at an administrative hearing. Webb v.

Commissioner of Social Security, 368 F.3d 629, 633 (6th Cir. 2004)   The claimant's residual

functional capacity is an administrative assessment of the extent to which an individual's medically

determinable impairment(s), including any related symptoms, may cause physical or mental

limitations or restrictions that may affect the claimant's capacity to do work-related physical and

mental activities. Converse v. Astrue, 2009 U.S. Dist. LEXIS 126214, *16 (S.D. Ohio, March 31,

2009), 20 C.F.R. §§ 404.1545(a), 416.945(a); see, Howard v. Commissioner of Social Sec., 276 F.3d

235, 239 (6th Cir. 2002).  "Ordinarily, RFC is the individual's maximum remaining ability to do

sustained work activities in an ordinary work setting on a regular and continuing basis…. A 'regular

and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

Converse, supra, at *17  Social Security Ruling 96-8p, 1996 SSR LEXIS 5 1 (emphasis in

original)(footnote omitted).  SSR 96-8p, 1996 SSR LEXIS 5; See,

http://www.ssa.gov/OPHome/rulings/rulings.html..


     In the present case the ALJ found, upon consideration of the entire record,  that Plaintiff had

the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a)

and 416.967(a) except she can only occasionally climb, stoop, bend, twist, kneel and crawl; she

cannot work around heights or hazards; she cannot climb ladders, ropes and scaffolding; and she is

limited to simple, unskilled work.  (Tr. 28).  The ALJ made this finding based on the objective

medical evidence and other evidence consistent with  20 C.F.R. §§ 404.1529 and 416.929 and SSRs

96-4p and 96-7p, including opinion evidence consistent with 20 C.F.R. §§ 404.1527 and 416.927

19

and SSRs 96-2p and 96-5p, 96-6p and 06-3p.  (Tr. 28)

The ALJ based his residual functional capacity determination upon the following:

Claimant alleged disability since February 25, 2004 due to multiple mental impairments, chronic neck and back pain, heart disease, fibromyalgia and breast cancer.  She stated that she cannot read or write well and that she is unable to tolerate prolonged sitting and standing.  She also stated that she is depressed and unable to handle stress.  (Tr. 29)  The ALJ found that some of Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms.  (Tr. 29).

Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible and were inconsistent with the residual functional capacity determination.  Plaintiff's allegation of breast cancer related disability were unsupported by the record,  which only shows history of remote mastectomy with no recurrence.  (Tr. 29, 859-65, 955-1048, 1079-98).

Regarding Plaintiff's claim of idiopathic cardiomyopathy, the record showed that Plaintiff was examined in 2001 for complaints of palpitations, a cardiac catheterization was negative for coronary artery disease, exhibiting an ejection fraction of 50 to 55%; Plaintiff was diagnosed with tachycardia; and, subsequently, Plaintiff's ejection fraction has consistently been in the 40 % range; diagnostic testing has been negative for ischemia, congestive heart failure and pulmonary edema; cardiac examinations have shown regular cardiac rhythm with no murmurs, gallops or rubs; Plaintiff reported several palpitations; and a defibrillator was implanted in September, 2004 to treat recurrent ventricular tachycardia.  (Tr. 29, 866-73, 1053-78, 1099-1145).  Plaintiff remained stable until April, 2009, when she reported a near-syncope episode; that a follow-up cardiac exam was essentially normal; and Plaintiff's ejection fraction was 45%.  (Tr 29, 1010-48, 1053-78).

Regarding Plaintiff's alleged back impairment, Plaintiff fell and injured her back in April, 2009; that she has mild thoracic and lumbar scoliosis, and mild degenerative changes at the lumbar-sacral level; she exhibited no swelling or atrophy of the lower extremities; she exhibited normal gait, negative straight leg raising and good range of motion of the spine; she was neurologically intact; she possessed normal strength in the lower extremities; she received medication for back strain; her physician gave her limited prescriptions for Vicodin (hydrocodone and acetaminophen combination); and her physician instructed her to avoid heavy lifting.  (Tr. 29, 955-1048, 1053-78).

Regarding Plaintiff's alleged mental impairments,  Plaintiff was treated with counseling for major depression in 2004.  (Tr. 29,. 874).  Plaintiff was seen in a consultative examination by Dr. Ickes in June, 2004, and Dr. Ickes noted that Plaintiff tested in the borderline level of intellectual functioning; she reported symptoms related to mild major

20

depression; she reported that she was able to manage a wide range of daily activities;  she enjoyed spending time with her family;  her mental status was normal;  Dr. Ickes assessed a GAF of 60 and opined that Plaintiff's primary limitations were physical rather than mental. (Tr. 29-30, 875-878).  The record showed that in April, 2009 Plaintiff requested that she be put back on antidepressants because she was feeling stressed due to the recent death of her mother and problems with her neighbors.  (Tr. 30, 1010-48).

Regarding Plaintiff's fibromyalgia, Plaintiff was diagnosed with this condition in 2003; she reported symptoms of fatigue, joint pain and migraine headaches; 2004 Plaintiff reported that she was feeling better because she was excited about the birth of her new granddaughter; and the medication she was prescribed (Bextra) was effective; and there are no more recent medical records regarding Plaintiff's fibromyalgia.  (Tr. 30, 955-1009).

Concerning opinion evidence, no treating or examining physician suggested that the Plaintiff has any physical or mental impairment which prevented her from working; but she has been told to avoid heavy lifting due to the 2009 back injury.  (Tr. 30).

The ALJ stated that his residual functional capacity determination is supported by the medical record, which shows that Plaintiff has a pacemaker for tachycardia, back pain, intermittent depression, fibromyalgia and borderline intellectual functioning, and that the aforesaid conditions and reasonable limitations associated therewith are adequately addressed in the residual functional capacity finding.  (Tr. 30).

Credibility

The ALJ determined that Plaintiff's testimony was insufficient to support a conclusion that Plaintiff had limitations greater than those identified, above.  (Tr. 30).

The ALJ found that Plaintiff has only recently been diagnosed with back strain and that the record failed to suggest that Plaintiff suffers from any long-standing, severe, spine-related incapacity; Plaintiff has been treated for complaints of situational depression only intermittently; Plaintiff's low intellectual functioning did not preclude work;  there are no recent records that

21

suggested that Plaintiff had severe, ongoing problems associated with a past diagnosis of fibromyalgia; Plaintiff had no recurrence of cancer; her most consistent medical problem is related to tachycardia and this condition has been addressed adequately with medications and a pacemaker, and there is no medical evidence suggesting that Plaintiff is incapacitated by her heart condition. (Tr. 30).

Accordingly, the ALJ found that there was a substantial disparity between Plaintiff's complaints and the objective medical findings contained in the record; Plaintiff's complaints of constant, incapacitating pain and other symptoms were neither reasonably consistent with the objective medical findings nor sufficiently credible as evidence additional to the objective medical record to support a finding of disability and Plaintiff's ability to engage in a wide range of daily activities belied her claims of total disability. (Tr. 30).

Additional Observation by the ALJ

The ALJ noted at the conclusion of his residual functional capacity determination that his conclusions regarding the severity of Plaintiff's impairments and the consequent limitations upon Plaintiff's functioning have taken into consideration source opinions of state medical examiners in accordance with Social Security Ruling 96-6p. The ALJ further found that, based on the medical evidence, the Plaintiff is more functionally restricted than was previously determined by the State Agency. (Tr. 30).

Hypothetical Questions

As previously discussed, at the December 29, 2009 hearing the ALJ asked the VE three hypothetical questions. The three hypotheticals are summarized, below.

22

The first hypothetical question asked that the VE assume an individual the same age, education and work experience as Plaintiff with the additional limitation of light work, with no more than limited stooping, kneeling, etc., no heights, etc., and limited to unskilled tasks requiring limited concentration.  The VE answered that there were jobs for such an individual  identifying  several jobs, described in the DOT  and the relevant numbers in the economy.   (Tr. 1177)

The second hypothetical, elaborated upon the description in the first but included the assumption that the individual was limited to sedentary work, with all other limitations remaining the same. The VE answered that there were jobs for such an individual  identifying  several jobs, described in the DOT  and the relevant numbers in the economy.  (Tr. 1177-78).

The third hypothetical, proposed that the VE consider certain additional limitations, specifically, that the hypothetical individual required frequent and unscheduled rest breaks throughout the course of the workday.  The VE answered that there would be no jobs that this individual would be able to perform.  (Tr. 1178).[10]

---

[10] The ALJ's third hypothetical was informed by the following exchange between Plaintiff and her counsel:

"Q.  All right, during the day, a normal day do you have to take a rest in the morning?
A.  Yes I do.
Q.  Typically how long are these rests?
A.  About an hour.  Anywhere between 20 minutes to an hour.
Q.  And how about the afternoon?
A.  I take a nap in the afternoon.
. . .

Q.  Now, Holly, in the course of an eight hour day, would you be able to work an eight hour shift?
A.  No.
Q.  Why not?
A.  Because I'm, I'm - - I get tired.  I get nauseated.  I can't handle the people

23

As noted, above, in his March 5, 2010 Notice of Decision the ALJ concluded, based on substantial evidence as set forth in the entire record, that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she can only occasionally climb, stoop, bend, twist, kneel and crawl; she cannot work around heights or hazards; she cannot climb ladders, ropes and scaffolding; and she is limited to simple, unskilled work.  (Tr. 28)

The RFC and additional limitations described in the ALJ's first hypothetical are inconsistent with the ALJ's final RFC determination (i.e., the first hypothetical described an individual who was able to perform light work, where the ALJ's RFC concluded that Plaintiff was able only to perform sedentary work).  It would, therefore, be improper to base an "other work" determination on the VE's answer to this hypothetical alone.

However, the ALJ's <u>second</u> hypothetical assumed the individual described in the first hypothetical, <u>except</u> that the individual was limited to sedentary work, with all other limitations remaining the same.  (Tr. 1177-78).  Accordingly, the second hypothetical described an individual with RFC and limitations consistent with the RFC and limitations ascribed to Plaintiff in the ALJ's Notice of Decision of March 5, 2010, (Tr. 28), and thus supports the determination, based on the

---

        like I    used to.
  Q.  So it would be - - you'd have to take a break of over a half hour both in the
       morning and the afternoon?
  A.  Yes.
  Q.  How about being able to work five days a week?  Can you work five days a
       week?
  A.  No."

(Tr. 1173-75).

VE's response to this second hypothetical, that there are jobs in the economy that Plaintiff can perform.

As a preliminary matter, it is important to reiterate that a vocational expert determines the capability of a claimant to perform alternative work through the answers received to hypothetical questions proffered by the ALJ.   See, e.g,. Hardaway v. Sec'y of Health & Human Services, 823 F.2d 922 (6th Cir. 1987); Varley v. Sec'y of Health & Human Services, 820 F.2d 777 (6th Cir. 1987).  "If the hypothetical question does not accurately portray Plaintiff's physical and mental state, the vocational expert's testimony in response to the hypothetical question may not serve as substantial evidence in support of the ALJ's finding that Plaintiff could perform other work." Lancaster v. Comm'r of Soc. Sec., 228 Fed. App. 563, 573 (6th Cir. 2007).

In the present case, it is clear that the ALJ posed his third hypothetical in response to the exchange between Plaintiff and her counsel.  (Footnote 9, above).  (Tr. 1173-74).  That is, in his third hypothetical the ALJ described an individual with a RFC identical to that described in the second hypothetical, but with the added limitation of needing to take rest breaks during the day, a limitation consistent with the Plaintiff's responses to the questions asked by her attorney in the colloquy quoted, above, but not necessarily consistent with the ALJ's final RFC determination.

That the ALJ posed such a question is not, however, equivalent to the ALJ reaching the conclusion that such RFC and attendant limitations were, ultimately, to be attributed to Plaintiff.  Rather, the  ALJ was merely presenting a  hypothetical question to the VE based on the record as it was evolving during the December 29, 2009 hearing.

It was only after all evidence had been presented, including evidence set forth in this hearing,

that the ALJ could, upon a thorough review of the <u>complete</u> record, make his determinations of, among other matters, the Plaintiff's residual functional capacity and associated limitations, the nature and kind of work the Plaintiff was capable of performing and whether there were jobs in the economy that the Plaintiff could perform.  Such review, and subsequent determination of Plaintiff's RFC and attendant limitations, required an assessment of various factors, including Plaintiff's credibility, which  could not be undertaken properly until all evidence, including hearing testimony, had been completed.

As discussed above, the ALJ determined that Plaintiff's hearing testimony was insufficient to support a conclusion that Plaintiff had limitations greater than those ultimately identified in his Hearing Decision.  (Tr. 30).   In light of this,  the ALJ found there was a substantial disparity between Plaintiff's complaints and the objective medical findings contained in the record.  (Tr. 30).  Plaintiff's complaints of constant, incapacitating pain and other symptoms were neither reasonably consistent with the objective medical findings nor sufficiently credible as evidence additional to the objective medical record to support a finding of disability.  (Tr. 30).  Finally, the ALJ found that Plaintiff's ability to engage in a wide range of daily activities belied her claims of total disability.  (Tr. 30).

On review for substantial evidence, courts must accord great deference to the ALJ's credibility determinations. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). The ALJ had the opportunity to observe plaintiff's demeanor while testifying. Id. citing Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997).  Courts may not decide questions of credibility when reviewing for substantial evidence. Myers v. Richardson, 471 F.2d 1265, 1267 (6th Cir. 1972). Discounting a claimant's credibility to a certain degree is appropriate where an ALJ finds

26

contradictions among medical reports, the claimant's testimony, and other evidence. <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d 387 at 392 (6th Cir. 2004);  <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525 at 531  (6th Cir. 1997).

In evaluating complaints of pain, for example, an ALJ may properly consider the credibility of the claimant. <u>Allen v. Comm'r of Soc. Sec.</u>, 561 F.3d 646, 652 (6th Cir. 2009) ("credibility determinations with respect to subjective complaints of pain rest with the ALJ").  "[S]ubjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." <u>Cruse v. Commissioner of Soc. Sec.</u>, 502 F.3d 532, 542 (6th Cir. 2007).

The ALJ must consider the entire record, including the claimant's statements about symptoms, evidence of physicians and other persons about the symptoms and how they affect the claimant and any other relevant evidence in the record.  Soc. Sec. Rul. 96-7p, 1996 SSR LEXIS 4 at *1, 1996 WL 374186 at *1-2.

There can be no consideration of the "entire record" until the record is complete.  Completing the record  entails receiving all evidence, including all testimonial evidence from whatever hearing or hearings may have been conducted in a matter.  Accordingly, it would be improper for an ALJ to form any definitive conclusions, including conclusions regarding an applicant's credibility, residual functional capacity, other related limitations or job availability until after such hearings had been completed.

In this light, Plaintiff's argument - that the ALJ erred because he failed to consider the VE's answer to the third hypothetical when making his finding - would appear to require the ALJ to make a

premature decision based on an incomplete record..

Contrary to Plaintiff's argument, the ALJ may pose hypothetical questions based upon his understanding of an applicant's history and condition, including his understanding of testimony offered at a hearing, but the ALJ is not, and, indeed, should not be, compelled to make a disability decision based on answers to such hypotheticals <u>until</u> the ALJ has reviewed the complete record, including the testimony or exhibits proffered at hearings.

Thus, only after the introduction of all evidence, including evidence from any hearings, may an ALJ, upon a review of the whole of the record, make such findings as would be deemed appropriate, consistent with applicable law, and supported by substantial evidence. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.' " <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777, 779 (6th Cir. 1987). Moreover, "If the hypothetical question does not accurately portray Plaintiff's physical and mental state, the vocational expert's testimony in response to the hypothetical question may not serve as substantial evidence in support of the ALJ's finding that Plaintiff could perform other work." <u>Michael v. Astrue</u>, 2010 W L 2868177, *5 (N. D. Ohio 2010), (<u>citing</u>, <u>Lancaster v. Commissioner of Social Security</u>, 2007 WL 1228667, at *9 (6th Cir.2007)). In formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he deems credible. <u>Id</u>. (<u>citing</u>, <u>Gant v. Commissioner of Social Security</u>, 2010 WL 1378427, at *3 (6th Cir. 2010) (<u>citing</u>, <u>Stanley v. Secretary of Health and Human Services</u>, 39 F.3d 115, 118-19 ( 6th Cir. 1994 )).

Finally, the logical and practical consequence of adopting Plaintiff's view would turn the fifth step of the five step sequential disability analysis on its head by limiting the ALJ's ability to make full inquiry at a hearing into all matters deemed relevant during an examination of a vocational expert.  Plaintiff's view entails that an ALJ could not ask questions that were intended to be merely tentative,  probative or speculative as to issues the ALJ had not yet come to determine with finality at the time of the hearing.. The logic of Plaintiff's argument leads to the untenable conclusion that a VE's answers to such questions would be binding upon an ALJ's determination of an applicant's RFC.  Moreover, accepting Plaintiff's view would lead to the odd and procedurally contradictory conclusion that an ALJ should make final determinations about an applicant's residual functional capacity and related limitations prior to having completed a review of the whole of the record.

Accordingly, this Court denies Plaintiff's Statement of Error and holds that the ALJ's decision that Plaintiff is not disabled is consistent with applicable law and based on substantial evidence.

## X.  CONCLUSION

The Court finds that Defendant's Motion that Plaintiffs Statement of Error be deemed waived because Plaintiff failed to make a specific argument regarding the ALJ's residual functional capacity finding is denied.

The further Court finds that the Commissioner's final decision is supported by substantial evidence in the record as a whole and must be affirmed.

Accordingly, the  final decision of the Commissioner is AFFIRMED; and the Plaintiffs Statement of Error is DENIED and  this case is TERMINATED on the docket of this Court.

29

IT IS SO ORDERED.

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Date:   November 29, 2011